# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ALABAMA
# MOBILE DIVISION

| | |
|---|---|
| SYLVIA MOTTLEY, individually and as parent and natural guardian of Dacoty Mottley<br><br>Plaintiff,<br><br>v.<br><br>HOUSING AUTHORITY OF THE CITY OF BREWTON, ALABAMA,<br><br>Defendant. | Civil Action No.:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Sylvia Mottley, individually and as the parent and natural guardian of Dacoty Mottley, files this complaint against the Housing Authority of the City of Brewton, Alabama, and states as follows:

## NATURE OF THE ACTION

1. This action stems from the Defendant's refusal to provide reasonable accommodations under the Fair Housing Act, Section 504 of the Rehabilitation Act, and the Americans with Disabilities Act. Plaintiff, whose autistic son is prone to elopement, requested minor modifications to the doors to her apartment, to prevent her young son from leaving the premises unsupervised. As detailed below,

Defendant's failure to act placed Plaintiff and her son in ongoing danger, forcing the Plaintiff to relocate to a new apartment at her own expense in order to protect her child's safety.

## PARTIES AND JURISDICTION

2. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as this case arises under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

3. Venue is proper in this District, as this is where the cause of action accrued and where the Defendant is located.

4. Plaintiff, Sylvia Mottley ("Sylvia"), is a citizen of Alabama, is over the age of nineteen and is otherwise *sui juris*. Sylvia brings this action in her own name, and as the mother and natural guardian of her minor son, Dacoty Mottley. Sylvia is disabled and falls within the class of persons protected by the federal statutes cited herein.

5. Plaintiff, Dacoty Mottley ("Dacoty"), is a minor resident of Alabama. Dacoty has been diagnosed with autism spectrum disorder and is within the class of persons protected by the federal statutes cited herein. He is represented in this action by and through his mother and natural guardian, Sylvia Mottley.

6. Defendant, Housing Authority of the City of Brewton, Alabama, was created pursuant to Ala. Code § 24-1-1, *et seq*. Housing authorities in Alabama are not immune from civil suits and have the power to sue and be sued, as provided under Ala. Code § 24-1-27(a)(22). Defendant also receives federal funding and is subject to the requirements of the Fair Housing Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act.

## STATEMENT OF FACTS

7. Sylvia Mottley is the mother of twin boys, who are eight years old. Both children have autism spectrum disorder (ASD). It is common for children who have ASD to run or wander away from caregivers or secure locations, a behavior that is called elopement. One of Sylvia's sons, Dacoty, has a history of elopement behavior, meaning he frequently attempts to leave secure environments, posing significant safety risks.

8. Around half of all individuals with autism under the age of 18 are thought to display elopement behavior[1]. In one major study published in the journal *American Academy of Pediatrics*, researchers found that of the children who tried to elope, more than half (53 percent) "went missing long enough to cause concern"[2].

---

[1] *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4524545/

[2] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4524545/

9. The characteristics of autism, such as sensory sensitivities, communication challenges, and fixations, contribute to the increased likelihood of elopement. The overwhelming sensory environment, difficulty expressing needs or emotions, and intense focus on particular interests can all play a role in elopement behaviors among children with autism.

10. Elopement poses serious safety concerns and risks for children with autism. The behavior can lead to potentially dangerous situations, such as getting lost, encountering traffic hazards, or being exposed to environmental dangers.

11. On or about October 31, 2022, Sylvia and her sons moved into an apartment managed by the Defendant, located at 126 Bryant Circle Brewton, AL 36426. Prior to moving in, Sylvia requested reasonable accommodations to modify the apartment's doorhandles to doorknobs, which she could cover with safety devices that work on doorknobs, which would prevent Dacoty from opening the doors and eloping.

12. Upon moving in, Sylvia discovered that the apartment had door handles, which Dacoty could easily open. Over the course of the next 18 months, Dacoty eloped from the apartment approximately 10 to 12 times *per week*, placing him at significant risk of harm.

13. In November 2022, Sylvia submitted a formal accommodation request to the Defendant's director, Tanisha Thomas, asking for doorknobs and screen doors

with locking mechanisms to be installed, which Dacoty could not easily operate. The requested screen door locking mechanisms presented another safety barrier to keep Dacoty from suddenly leaving the apartment – as Dacoty could not operate the locking mechanism. Despite receiving the request, Defendant failed to provide these accommodations.

14. From November 2022 to May 2024, Dacoty eloped from the apartment 10 to 12 times per week, which averages to between 790 and 948 times during Plaintiff's tenancy. While no injuries were sustained, the elopements caused significant distress and fear for Sylvia, who was afraid to perform basic tasks like showering, using the restroom, or sleeping, as Dacoty would often elope during these times.

15. In response to Sylvia's repeated requests, Defendant offered a keypad lock in November or December 2022 - but rescinded the offer shortly thereafter. The offer was not renewed until March 2024, well over a year after the initial request.

16. In January 2024, Sylvia filed a complaint with the U.S. Department of Housing and Urban Development (HUD) and a separate complaint with the U.S. Department of Justice (DOJ) on January 8, 2024. The DOJ responded on January 10, 2024, directing her to follow up with HUD. No resolution was reached through these complaints.

17. On May 10, 2024, Sylvia and her family were forced to move out of the apartment due to the Defendant's failure to accommodate her request.

18. As a result of Defendant's refusal to accommodate, Sylvia incurred various damages, including but not limited to the following: expenses for hiring movers, renting a truck, fuel costs, deposits for utilities, transfer fees for electric and cable services, and a security deposit for her new apartment. Additionally, Sylvia now pays higher rent at her new apartment compared to her previous unit. She also suffered emotional distress, mental anguish, and ongoing anxiety due to the persistent safety risks posed by her son's elopement and the failure of Defendant to provide reasonable accommodations. Furthermore, Sylvia lost the quiet enjoyment of her home, living in a constant state of fear for her son's safety.

19. Plaintiff has performed all conditions precedent to this action, or said conditions have been waived or excused.

## COUNT I
### Violation of the Fair Housing Act (42 U.S.C. § 3601 et seq.)

20. Plaintiff realleges and incorporates by reference paragraphs 1-19 of this Complaint.

21. The Fair Housing Act prohibits discrimination in housing on the basis of disability, including the refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to

afford a person with a disability an equal opportunity to use and enjoy a dwelling (42 U.S.C. § 3604(f)(3)(B)).

22. Plaintiff's son, Dacoty, is a qualified individual with a disability as defined by the Fair Housing Act. Dacoty suffers from autism spectrum disorder, a condition that substantially limits one or more major life activities, including his ability to remain safely within a secure location due to elopement behavior.

23. Under the FHA, a landlord must permit reasonable accommodations and reasonable modifications for persons living with a disability as defined in the Fair Housing Act, Americans with Disabilities Act, and by the United States Supreme Court.

24. The denial or delay in a request for reasonable accommodations and reasonable modifications is defined as unlawful discrimination based on disability status.

25. Undue delay in answering or completing a reasonable request for accommodation or modification will be deemed to be a denial of such request, making it unlawful discrimination based on disability status.

26. Defendant was aware of Dacoty's disability and Plaintiff's specific request for reasonable accommodations, including the installation of doorknobs and screen doors, which were necessary to prevent Dacoty from eloping and to ensure his safety in the apartment.

27. Plaintiff's request for accommodations was reasonable, as the modifications would not have imposed undue financial or administrative burdens on the Defendant, nor would they have fundamentally altered the nature of the housing services provided.

28. Defendant refused to provide the requested reasonable accommodations, and no alternative accommodations were offered that would effectively address the safety risks caused by Dacoty's elopement.

29. As a direct result of Defendant's failure to accommodate, Plaintiff suffered substantial harm, including increased safety risks for her son, emotional distress, and financial costs associated with relocating to a safer environment.

30. Defendant's conduct constitutes unlawful discrimination, in violation of 42 U.S.C. § 3604(f)(1), (f)(2), and (f)(3)(A).

31. Pursuant to 42 U.S.C. § 3613(c)(2) and other applicable law, Plaintiff is entitled to recover the reasonable attorney's fees and costs incurred in seeking relief under the Act.

## COUNT II
**Violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794)**

32. Plaintiff realleges and incorporates by reference paragraphs 1-31 of this Complaint.

33. Section 504 of the Rehabilitation Act prohibits discrimination on the basis of disability in any program or activity receiving federal financial assistance (29 U.S.C. § 794(a)). The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

34. Defendant receives federal financial assistance and is therefore subject to the requirements of Section 794.

35. Plaintiff's son, Dacoty, is a qualified individual with a disability as defined by the Rehabilitation Act. Dacoty suffers from autism spectrum disorder, a condition that substantially limits one or more major life activities, including his ability to remain safely within a secure location due to elopement behavior.

36. Defendant was aware of Dacoty's disability and was informed of Plaintiff's specific request for reasonable accommodations, including the installation of doorknobs and screen doors with locking mechanisms, to mitigate the risks associated with Dacoty's elopement behavior.

37. Plaintiff's request for accommodations was reasonable, as the modifications sought would not have imposed an undue burden on Defendant, nor would they have fundamentally altered the nature of Defendant's housing services.

38. Defendant failed to provide the requested accommodations and did not offer any effective alternative to address Plaintiff's needs. Defendant's actions deprived Plaintiff and her son of the benefits of housing services on the basis of Dacoty's disability.

39. As a result of Defendant's failure to accommodate, Plaintiff suffered substantial harm, including emotional distress, mental anguish, and financial expenses associated with relocation.

40. Defendant's actions constitute discrimination on the basis of disability in violation of Section 504 of the Rehabilitation Act.

41. Pursuant to 29 U.S.C. § 794a and other applicable law, Plaintiff is entitled to recover the reasonable attorney's fees and costs incurred in seeking relief under the Act.

### COUNT III
### Violation of the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.)

42. Plaintiff realleges and incorporates by reference paragraphs 1-41 of this Complaint.

43. Title II of the Americans with Disabilities Act (ADA) prohibits public entities, including public housing authorities, from discriminating against qualified individuals with disabilities in the provision of services, programs, or activities (42 U.S.C. § 12132).

44. Plaintiff's son, Dacoty, is a qualified individual with a disability as defined by the Americans with Disabilities Act. Dacoty suffers from autism spectrum disorder, a condition that substantially limits one or more major life activities, including his ability to remain safely within a secure location due to elopement behavior.

45. Defendant is a public entity subject to the ADA and is required to make reasonable modifications in policies, practices, or procedures to avoid discrimination on the basis of disability unless doing so would impose an undue burden or fundamentally alter the nature of the services provided.

46. Plaintiff requested reasonable modifications to the apartment's door handles, asking that they be replaced with doorknobs and screen doors with locking mechanisms that Dacoty could not operate, to prevent his elopement and ensure his safety in the apartment.

47. Plaintiff's request was reasonable and necessary to ensure her son's equal access to and enjoyment of the housing services provided by Defendant.

48. Defendant refused to make the requested modifications and did not provide any effective alternatives that would ensure Plaintiff and her son could safely enjoy their apartment.

49. As a direct result of Defendant's refusal to accommodate, Plaintiff and her son were denied equal access to housing services, causing emotional distress, mental anguish, and financial hardship due to relocation expenses.

50. Defendant's actions constitute discrimination in violation of Title II of the ADA.

51. Pursuant to 42 U.S.C. § 12205 and other applicable law, Plaintiff is entitled to recover the reasonable attorney's fees and costs incurred in seeking relief under the Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

1. A declaration that Defendant's actions violated the Fair Housing Act, Section 504 of the Rehabilitation Act, and the Americans with Disabilities Act;

2. Compensatory damages for emotional distress, mental anguish, loss of enjoyment of life, and out-of-pocket expenses;

3. Reimbursement of all out-of-pocket expenses related to the failure to accommodate and Plaintiff's relocation to another residence;

4. Attorney's fees and costs;

5. Any other relief the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues herein triable as of right by jury.

Respectfully submitted on: October 4, 2024

By:

/s/ Ramon Martin
Ramon Martin (ASB-1597-X69W)

**Of Counsel**:
The Justice Law Firm, LLC
505 20th St. N., Suite
Suite 1220-1157
Birmingham, AL 35203
T: (205) 983-2017
E: Ramon.Martin@LegalJusticeMatters.com